**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TREVOR A. YOUNG,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:26-cv-02739-JDW** |
| | : | |
| **LANCASTER COUNTY PRISON,** ***et al.*** | : | |
| **Defendants.** | : | |

## MEMORANDUM

Trevor Young asserts a long list of claims about his incarceration at Lancaster County Prison. Many of those claims are not viable, but his claims against Warden Cheryl Stebeger over excessive heat at the prison can proceed. Of the remaining claims, I will sever some into a separate lawsuit, and I will dismiss the rest. I will give Mr. Young an opportunity to file an amended complaint, if he wants, to add additional facts for some of those claims.

## I. FACTUAL ALLEGATIONS

Mr. Young has been incarcerated at LCP since July 2025. His Complaint contains several different sets of factual allegations to support a variety of claims.

### A. Excessive Heat

Mr. Young arrived at LCP on July 18, 2025, when the outside temperatures were mid-90 degrees and humid. There was no air circulation in his cell or any other. Most of the time, cells had no air flow and were noticeably hotter than common areas. The heat and exhaustion prevented Mr. Young from sleeping. At some point, he was moved to a

different block, where he experienced the same high temperatures and stagnant air. In response to a grievance from Mr. Young dated August 13, ,2025 concerning the excessive heat, an LCP staff member responded: "Humanity existed for a significant period of time without air conditioning. In fact, the convenience of modern air conditioning has only existed since 1902. With that said, air conditioning is not Federally required nor is it state mandated. You are not alleging suffering any adverse effect from the heat." (ECF No. 3-1 at 2.)

LCP provided inmates with a free pair of shorts and brought a cooler of ice water to the block every few hours. Mr. Young learned that the prison provided those things after an inmate reportedly died of heat stroke, and Warden Steberger told the media that the free shorts and water would mitigate the heat problem. The water provided often tasted like salt, soap, and mop water. Prison authorities denied his requests for bottled water. Mr. Young asserts that an answer to one of his grievances about the water admitted that the water is treated on-site for the newer part of the prison.

The heat issues continued in July and August 2025. Most prisoners must stay in their cells to eat meals, so there was no relief from the heat. Throughout that time, Mr. Young asked prison employees, management, and sick call to do something about the extreme heat, the drinking water in the coolers, and bad water coming through faucets. Mr. Young spoke with Warden Steberger personally during the heat wave in early August, and she replied that nothing could be done about it, but that it would be fixed in the new

prison that Lancaster County was building. Staff echoed the same message, including in response to Mr. Young's grievance. A week after the Warden's statement to him, prison officials removed a heat stroke victim during the night.

### B. Starvation And Congestive Heart Failure

The extreme heat caused Mr. Young to starve and suffer dehydration. He did not eat anything due to the extreme heat during the first week of his arrival to LCP, which he reported to the sick call nurse. Mr. Young told the prison and sick call that he was starving and becoming weaker, with other symptoms. They ignored him and told him to eat the food he was served. Guards had to check how much he ate.

The prison took him to the hospital at the end of the sixth week of not eating, after his family called the court and prison. A doctor at the hospital found no problems after imaging and blood tests. When Mr. Young returned to prison, the staff administered prescribed medicine incorrectly, rendering it ineffective.

A Prime Care employee offered to put him on Ensure, and that helped. Yet after the third day on the supplement, Prime Care discontinued it. It took two weeks, until the same employee came back on duty, for him to get back on the supplement. He then had several health problems, some of which persist. Prime Care removed the Ensure from Mr. Young's diet around September 4, 2025. Mr. Young suffered symptoms of congestive heart failure, perhaps related to the heat, after he started eating prison food. His symptoms commenced on September 15, 2025.

Prime Care employees are, for the most part, rude and abusive. Nurses have abused him during blood draws and required him to dress his own wounds. But they have refused to give him more Ensure, even though he shows signs of malnutrition.

**C. Back Injury**

On October 11, 2025, Mr. Young fell. He felt most of the nerves in his back pinch, particularly in his lower back on the left side. When he tried standing up, he could not do so without using his arms and an object to help. Mr. Young submitted a sick call slip and the block worker reported the fall to the on-duty corrections officer. At sick call, staff took his vitals, but they did not examine his back or send him for X-rays. They offered him Motrin. He was assigned a bottom bunk. Someone said that medical staff would follow up within a week, but no one did so.

On November 12, 2025, a physician's assistant came to address all of Mr. Young's issues: he performed an X-ray; asked about Mr. Young's bowels; and offered medicine and water pills. The PA also performed a sonogram to check for water around Mr. Young's heart, but Mr. Young doubted the efficacy. After that visit, medical staff ignored him for months, but in or around February 2026, they informed Mr. Young that he only had swelling and arthritis. Mr. Young doubts that conclusion

Around December 4, 2025, Prime Care removed all his restrictions imposed after his fall, and Mr. Young was again assigned to a top bunk, even though he's not physically able to use a top bunk. On days he has to walk, even to medical, the pain progresses. He

allegedly has kept sick call and the prison updated on his condition. On April 1, 2026, he was granted bottom bunk restriction again.

**D. Other Health Complaints**

Mr. Young recites a long litany of other health issues. Once, his cellmate tested positive for tuberculosis, and when a block officer called medical, the medical staff were unwilling to help. Medical staff ignored Mr. Young for five days in January 2026 while he had severe jaw, face, and head pain. Then they told him he could have Motrin unless he had an infection. Mr. Young fears having to clip his nails or getting his face or hair trimmed, due to unsanitary conditions. The prison barber purportedly does not clean equipment between inmates and is supposedly an animal groomer.

**E. C.O. Caine**

On or around September 25, 2025, Mr. Young met Correctional Officer W. Caine, who started a conversation. Officer Caine expressed his willingness to engage in violence against current and former inmates. Minutes later, Officer Caine's supervisor yelled at Mr. Young and told him not to question an officer. After the supervisor left, Officer Caine threatened Mr. Young.

Mr. Young filed a grievance on September 25, 2025, but it was denied as unfounded. The grievance officer said that Mr. Young had encroached Officer Caine's boundaries during the exchange. In late November 2025, Mr. Young handwrote a criminal complaint against Officer Caine and sent it to the district attorney's office. The block

counselor refused to give him a form, so Mr. Young had to improvise. A few weeks later, there was a surprise canine inspection of a few cells on his block, including his. An officer who resembled Officer Caine's supervisor patted Mr. Young down, allegedly pushing his body into Mr. Young's rear, squeezing him very hard all over, and forcing his fingers into Mr. Young's testicles and penis. Mr. Young complained, and the officer departed. Mr. Young submitted a complaint, which the answering supervisor called unfounded and denied. Mr. Young reported the pat down and Officer Caine's threats to a person outside the prison. Mr. Young later heard that Officer Caine retired in December 2025. Mr. Young has refiled the criminal complaint with the district attorney's office.

### F. Grievances

Mr. Young filed multiple grievances. He contends that prison officials, including Warden Steberger, denied, ignored, and took no action in response to grievances he filed concerning the extreme heat and lack of ventilation, foul-tasting water, administration of his health care, allegations that a block worker was making his food unsanitary, and alleged threats by Officer Caine.

### G. Procedural History

Mr. Young alleges claims for violations of the Fourth, Eighth, and Fourteenth Amendments. He seeks money damages, injunctive relief, and attorneys' fees and costs.

## II. STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that she is unable to pay for the costs of her suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, it must determine whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Pursuant to that standard, I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*,, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

### A. *In Forma Pauperis*

Mr. Young has completed the required forms, attested under penalty of perjury that he lacks the income and assets to pay the required filing fee, and submitted his prison account statement. I will therefore permit him to proceed *in forma pauperis*. Pursuant to the Prison Litigation Reform Act, he will still have to pay the filing fee in installments.

**B. Misjoinder of Claims**

Mr. Young's Complaint is "best described as a 'kitchen sink' or 'shotgun' complaint because it essentially seeks to bring every conceivable claim against every conceivable defendant." *Anderson v. First Premier Bank,* No. 25-5502, 2025 WL 3214776, at *6 (E.D. Pa. Nov. 17, 2025) (quotation omitted)). Courts have criticized this type of pleading as "troublesome for many reasons," including that it "harms the plaintiff who brings it," because any "genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of which may not rise to the level of a constitutional claim." *Id.* (internal quotations and citations omitted). Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim … may join, as independent or alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, No. 22-1488, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024) (quotation omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *Williams v. Miller*, No. 25-6293, 2026 WL 209815, at *8 n.12 (E.D. Pa. Jan. 27, 2026) (quotation omitted). Indeed, courts "have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison." *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *15 (D.N.J. June 4, 2014). To remedy a misjoinder, a judge may add or drop a party or sever any claims. Fed. R. Civ. P. 21. Rule 21 "give[s] district courts broad discretion in deciding whether to sever a case by way of severing parties or claims." *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013).

Mr. Young's claims fall into allegations relating or at least tangentially relating to his conditions of his confinement at LCP, as well as an alleged failure to treat those and other medical conditions, and other unrelated claims against Officer Caine. The latter claims are misjoined. To the extent that Mr. Young has also alleged individual liability of Warden Steberger related to Officer Caine's actions, those claims also do not belong in this lawsuit. Accordingly, I will sever into a separate civil action the claims against Officer Caine and against Warden Steberger individually to the extent they relate to Officer Caine's actions. If Mr. Young seeks to proceed on those claims, he will have to pay a

separate filing fee to pursue them, whether outright or in accordance with 28 U.C.S. § 1915(b) after getting leave to proceed *in forma pauperis*.

**C. Merits Of Remaining Claims**

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).

**1. Claims against LCP**

To bring claims under § 1983, the plaintiff must show a deprivation committed by a *person* acting under color of state law. *West*, 487 U.S. at 48 (emphasis added). A jail or correctional facility is not a "person" under § 1983, and thus, not an appropriate defendant in this action. *Herr v. Lancaster Cnty. Prison*, No. 24-6686, 2025 WL 553625, at *2 (E.D. Pa. Feb. 19, 2025). I will therefore dismiss with prejudice the claims against LCP. If Mr. Young

seeks to file an amended complaint, he must allege claims against persons acting under color of state law to proceed.

**2. Claims against Prime Care**

A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. A private health company providing services to inmates "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Rather, [t]o plead a § 1983 claim against a prison medical provider, a plaintiff must allege the provider had "a relevant ... policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Id.* at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). "To satisfy the pleading standard, [the plaintiff] must ... specify what exactly that custom or policy was."[1] *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City*

[1] A plaintiff may also state a basis for liability against an entity like Prime Care by "alleging failure-to-supervise, train, or discipline ... [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. Prime Care Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe County*, 789 F. App'x 313 (3d Cir. 2019). Mr. Young has not alleged that he was injured due to a failure to supervise, train, or discipline.

*of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Mr. Young has not tied his allegations of deliberate indifference to a Prime Care custom or policy. In fact, he has not identified any Prime Care policy or custom that caused his alleged constitutional violations. He maintains that Prime Care workers treat inmates badly, but this is not a policy. A policy allegation based solely on a plaintiff's own personal experiences does not state a plausible *Monell* claim. *See Phillips v. Northampton County,* 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*). In the absence of allegations of a Prime Care policy or custom that caused his injuries, Mr. Young's allegations are insufficient to allege a plausible claim against Prime Care. *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017).

In addition, to state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of*

*Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quotation omitted). A plaintiff alleges deliberate indifference "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) *cert. denied*, 2026 WL 1718015 (U.S. June 15, 2026) (citation omitted). He can meet this standard by alleging a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). Mr. Young has not made the required allegations. I will therefore dismiss the deliberate indifference claims against Prime Care without prejudice for failure to state a claim.

### 3. Claims against Warden Steberger

I understand Mr. Young to assert constitutional claims against Warden Steberger based the denial of or apparent inaction in the face of grievances he filed concerning the extreme heat and lack of ventilation, foul-tasting water, administration of health care, allegations that a block worker was making his food unsanitary, and alleged threats by

Officer Caine. He also claims that Warden Steberger was deliberately indifferent to the life-threatening conditions of his confinement.[2]

### a. Claims about grievances

Mr. Young alleges Warden Steberger ignores grievances that raise concerns about prisoner health and well-being. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citations omitted). Thus, a prison official's participation in the grievance process, failure to take action in response to a prisoner's letter about the conditions in which he is confined, or failure to act after becoming aware of an employee's actions, is, without more, an insufficient basis upon which to base those officials' personal involvement in the underlying violations. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*). Thus, to the extent Mr. Young

[2] In submitting his Complaint, Mr. Young checked the box on the form he used indicating that he seeks to name Warden Steberger in her individual and official capacities. Claims against county employees such as Warden Steberger named in their official capacity are indistinguishable from claims against the governmental entity that employs her. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694. The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan,* 564 F.3d at 658. Mr. Young fails to allege that he suffered a constitutional violation due to a Lancaster County policy or custom. Accordingly, any official capacity claims against Warden Steberger are not plausible, and it's not clear to me that Mr. Young actually intended to submit such a claim. I will entertain a request by Mr. Young to amend his pleading to reassert an official capacity claim/*Monell* claim against Lancaster County should Mr. Young be able to cure this defect.

bases his claims against Warden Steberger on the alleged improper handling of or response to grievances generally, the claims are not plausible. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*). I will dismiss this claim with prejudice because there is nothing Mr. Young could add in an amended pleading that would alter this outcome.

**b. Excessive heat**

"To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834 (alterations omitted)). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "[S]o long as the conditions of ... confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In cases arising from inadequate cooling or ventilation, the Eighth Amendment is concerned with both the "severity" and the "duration" of the prisoner's exposure to these conditions. *Rosa-Diaz v. Harry*, No. 16-2303, 2017 WL 1316946, at *9 (M.D. Pa. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 1283771 (M.D. Pa. Apr. 6, 2017). A prisoner's mere discomfort, without more, does not offend the Eighth Amendment. *Id.* at *9. An inmate may state an Eighth Amendment claim when officials are deliberately indifferent to circumstances causing a serious medical condition like heat stroke. *Kost v. Kozakiewicz*, 1 F.3d 176, 189 (3d Cir. 1993). Brief or intermittent prison ventilation problems that correctional officials promptly address and that are not sufficiently severe, protracted, or harmful to the prisoner do not constitute cruel and unusual punishment that violates the Eighth Amendment. *See Marinelli v. Sorber*, No. 22-CV-2401, 2022 WL 4280476, at *5 (E.D. Pa. Sept. 15, 2022) (citing cases).

Mr. Young alleges an objectively serious deprivation. His assertions of prolonged extreme heat without appropriate ventilation in July and August 2025, coupled with his own pleaded health effects that included hospitalization after a six-week inability to eat, plus the allegations that two other inmates suffered heat stroke, cannot all be disregarded as an inmate's mere "discomfort." *Erskine*, 2022 WL 16921844, at *4. "A condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." *Dixon*, 114 F.3d at 643. While intermittent interruptions in air ventilation may not rise to constitutional magnitude, Mr. Young has plausibly alleged

here that the air ventilation issues were not intermittent; they were the status quo during mid-July and August 2025, and he and others suffered ill health effects as a result. *See Rosa-Diaz*, 2017 WL 1316946, at *9.

Under *Farmer*, a plaintiff must allege that the prison official acted with "deliberate indifference," that is, that the official knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

In this case, Mr. Young alleges that Warden Steberger had direct knowledge of LCP's lack of air ventilation in the cells, as well as knowledge of the danger that the heat posed because an inmate allegedly died that summer from heat stroke. Mr. Young filed at least two grievances about the extreme heat and lack of ventilation. Staff responded by confirming the lack of air conditioning while asserting that access to air conditioning was not a federal right.

Mr. Young has alleged facts supporting a plausible inference of deliberate indifference by Warden Steberger at this early stage of the litigation. Mr. Young speculates that the coolers of water and shorts attempted to mitigate the heat. But whether that supposed mitigation effort or others were sufficient considering the risk is a question for a later time. At this point, I take the alleged facts together to infer that

Warden Steberger was aware of and disregarded a substantial risk of harm to Mr. Young from the hot conditions. *See Forshey*, 2015 WL 5173717, at *8.

**c. Water**

Mr. Young does not allege that Warden Steberger personally knew of any problems with the quality of the water at LCP, either in coolers or from the tap, nor does he allege any specific problems with the water, other than its taste. Mr. Young therefore has not alleged an "objectively, sufficiently serious" deprivation of "the minimal civilized measure of life's necessities." *Porter*, 974 F.3d at 441 (quotation marks and citation omitted). Access to potable water is a "basic human need." *Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013). Deprivation of water can be sufficiently serious where an inmate does not have access to other fluids. *See Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (*per curiam*). Although Mr. Young alleges that the water provided in coolers often tasted like salt, soap, and mop water, he does not specify when or how often he used the coolers, nor does he state that he lacked access to other fluids at those times. *See Gardner v. Lanigan*, No. 137064, 2018 WL 4144689, at *4 (D.N.J. Aug. 30, 2018). While Mr. Young speculates that the water contributed to kidney stones, he only makes a single vague mention of it, when he has otherwise provided an exhaustive recitation of his health history since July 2025. This speculative reference in passing to a potential health issue does not state a plausible deprivation claim.

Mr. Young also does not allege that he did not have access to water in his cell, nor does he assert a plausible claim that the water in the coolers or from the faucet was not potable and that staff were deliberately indifferent to his need. I will dismiss this claim but grant Mr. Young leave to amend.

#### d. Medical care

Mr. Young does not allege that Warden Steberger herself was involved in the health care he received for his eating difficulties, or that she personally lifted his health restrictions in November 2025. Rather, he claims generally that she had the authority to resolve medical issues at the prison but chose not to do so, suggesting that Mr. Young wants to assert claims against Warden Steberger based on her supervisory role at LCP. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the]

constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga v. New Jersey. Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Additionally, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*).

Mr. Young has not asserted that Warden Steberger maintained a practice, policy, or custom that directly caused Mr. Young's alleged health problems. Nor has he alleged that she engaged in personal conduct or directed others to engage in conduct to violate his constitutional rights with respect to his health. *Chavarriaga*, 806 F.3d at 227. Further, Mr. Young has yet to plausibly allege an underlying constitutional violation with respect to his health care at LCP. *Allen*, 904 F. App'x at 127. I will therefore dismiss these claims against Warden Steberger will without prejudice for failure to state a claim.

**e. Food served by block worker**

Although Mr. Young mentions a block worker making food unsanitary in grievances that he attaches to the Complaint, he has not included any allegations in the body of his extensive Complaint. He only briefly mentions the fact that he filed a grievance

which led to the purported assault, but the mere reference to the filing of a grievance or grievances does not suffice to state a plausible claim. While I can consider exhibits attached to a *pro se* plaintiff's complaint, a complaint cannot state a claim by relying solely on exhibits, absent factual allegations in the complaint that explain the basis for the plaintiff's claims against the defendants. *See Kwanzaa v. Tell*, No. 21-1939, 2022 WL 16756334, at *3 (3d Cir. Nov. 8, 2022) (*per curiam*). Therefore, I will dismiss any such claims for failure to state a claim.

**D. Motions For Production, Preservation, And To Amend**

Mr. Young's request for discovery is premature, as his case has not passed the required statutory screening under 28 U.S.C. § 1915(e)(2)(B), he has not completed service of process under Federal Rule of Civil Procedure 4, and no defendant has yet appeared in this case. As Federal Rule of Civil Procedure 26(d)(1) makes clear, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." As the parties have not conferred and no exception listed above applies, Mr. Young's motion is premature.

Mr. Young also seeks to amend his Complaint by adding claims through a motion. Mr. Young cannot amend in this fashion because the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2

(E.D. Pa. June 22, 2021) If Mr. Young decides to amend his complaint, then consistent with this decision and the accompanying Order, he can seek to add claims that are not misjoined.

## IV. CONCLUSION

I will grant Mr. Young leave to proceed *in forma pauperis*. I will sever the claims against Officer Caine from the rest of the claims in this Complaint. To the extent that Mr. Young names Warden Steberger in her individual capacity with respect to claims involving Officer Caine, I will also sever those claims. I will dismiss claims against LCP and against Warden Steberger individually alleging deliberate indifference related to grievances with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). I will dismiss without prejudice the claims against Warden Steberger in her official capacity and those alleged in her individual capacity for deliberate indifference with respect to water, health care treatment, and food service/assault. I will dismiss claims against Prime Care without prejudice for failure to state a claim. I will permit the claim for deliberate indifference under the Eighth Amendment against Warden Steberger based on excessive heat to proceed. Finally, I will deny the Motion For Production And Preservation Of Records and the Motion To Amend Complaint without prejudice. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

October 15, 2026